**08 CV 01719**

SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center, Room 4300
New York, NY 10281
Valerie Szczepanik
(212) 336-0175
(212) 336-1317 (fax)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION, :
:
　　　　　　　　　　　　　　　　Plaintiff, :
:
　-against- :
: 08 Civ.    (    )
CLEAN CARE TECHNOLOGIES, INC., :
EDWARD KLEIN, AL NAZON and :
ANIL VARUGHESE, :
:
　　　　　　　　　　　　　　　　Defendants, :
:
　　　　　and :
:
CLEAN CARE SYSTEMS, LLC, :
:
　　　　　　　　　　　　　　　Relief Defendant. :
------------------------------------------------------------x

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") brings this action against Defendants Clean Care Technologies, Inc. ("CCT"), Edward Klein ("Klein"), Al Nazon ("Nazon"), Anil Varughese ("Varughese") (collectively, the "Defendants") and Relief Defendant Clean Care Systems, LLC ("Systems"). The Commission alleges the following:

### SUMMARY

1.　　From approximately March 2006 through at least July 2007, Defendants orchestrated a fraudulent unregistered offering of CCT and Systems securities (together, "Clean

Care Securities") and raised approximately $2.2 million by defrauding at least 26 unsuspecting investors.

2. Both CCT and Systems purported to be engaged in the business of selling self-cleaning toilet seats and cleaning fluid throughout North and South America. Both entities claimed to hold the exclusive license to distribute and market the Eyegiene "hands free hygienic" toilet seat in the United States. The existence of two Clean Care entities was itself part of Defendants' fraudulent fundraising scheme, as investors in CCT and Systems were not told that Defendant Klein had established two separate entities that claimed to hold the same "exclusive" license. Nor were investors told that funds collected from CCT and Systems investors were freely commingled to benefit Defendants Klein, Nazon and Varughese.

3. Klein, CCT's president, retained Nazon and Varughese as salespersons to sell Clean Care Securities to investors. Klein, Nazon and Varughese prepared a confidential private offering memorandum (the "CCT POM") that was sent to investors. The CCT POM misrepresented, and failed to disclose, material information. For example, the CCT POM falsely claimed that CCT "exclusively distributes and markets" the Eyegiene self-cleaning toilet seat. The POM failed to disclose that Klein was a general partner in a related company, Systems, and that Systems owned the distribution rights to the Eyegiene seat. The POM failed to disclose that CCT investor monies would be diverted to pay Systems' expenses.

4. The Defendants also issued false press releases that contained numerous falsehoods and made oral misrepresentations, through telephone calls and meetings with individual investors. For example, as part of their efforts to market Clean Care Securities, Defendants published false press releases boasting of significant toilet seat sales to "major

corporate entities." Defendants later admitted to the Commission staff, however, that those statements in the press releases were false. Defendants had not sold *any* seats to the corporate entities mentioned in their press releases.

5. Defendants Nazon and Varughese, by their own admission, are not registered as brokers or dealers or associated with any registered broker-dealers, but nevertheless engaged in cold-calling to sell Clean Care Securities to the public. Klein paid Nazon and Varughese exorbitant, undisclosed commissions of as much as 30 percent for their sales of Clean Care Securities.

## VIOLATIONS

6. Through this conduct, and that detailed below, the Defendants have violated Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a), 77e(c) and 77q(a), and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

7. Defendants Nazon and Varughese also have violated Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a) and were aided and abetted in their violations of Section 15(a) by Defendant Klein.

## JURISDICTION

8. The Commission brings this action pursuant to authority conferred by Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), seeking to permanently enjoin the Defendants from engaging in the wrongful conduct alleged in this complaint. In addition, the Commission seeks a final judgment ordering the Defendants and Relief Defendant to disgorge their ill-gotten gains and to pay prejudgment

interest thereon. The Commission seeks a final judgment ordering the Defendants to pay civil money penalties pursuant to Section 20(d)(3) of the Securities Act, 15 U.S.C. § 77t(d)(3), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), and barring Klein, Nazon and Varughese from participation in any offering of penny stock pursuant to Section 20(g) of the Securities Act, 15 U.S.C. § 77t(g), and Section 21(d)(6) of the Exchange Act, 15 U.S.C. § 78u(d)(6). The Commission also seeks an order directing the Defendants and Relief Defendant to provide verified accountings. Finally, the Commission seeks all other just and appropriate relief. See 15 U.S.C. § 78u(d)(5).

9. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Sections 21(d), 21(e) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 77u(e) and 78aa.

10. Venue lies in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa. Certain of the transactions, acts, practices and courses of business constituting the violations alleged herein occurred within the Southern District of New York.

11. The Defendants, directly or indirectly, singly or in concert, have made use of the means or instrumentalities of transportation or communication in, or the instrumentalities of, interstate commerce, or of the mails, in connection with the transactions, acts, practices, and courses of business alleged in this complaint.

## THE DEFENDANTS

12. **CCT** purports to be a New Jersey corporation with a principal place of business at

4400 Route 9 South, Suite 1000, Freehold, New Jersey 07728. New Jersey state records appear to indicate that Klein filed papers to create CCT as a Limited Liability Company on or around November 14, 2005, then filed additional papers to create an incorporated entity, "CleanCare Technologies, Inc.," on or around March 8, 2006. These appear to be the same entity, referred to herein as "CCT."

13. **Ed Klein**, age 64, was at all times relevant to the instant action president of CCT and General Partner of Systems. Klein is not registered as a broker-dealer or associated with any registered broker-dealer.

14. **Al Nazon**, age 29, is a resident of Staten Island, New York who sold and marketed Clean Care Securities at certain times from an office in lower Manhattan. Nazon is not registered as a broker-dealer or associated with any registered broker-dealer.

15. **Anil Varughese**, age 31, is a resident of Glen Oaks, New York who sold and marketed Clean Care Securities at certain times from an office in lower Manhattan. Varughese is not registered as a broker-dealer or associated with any registered broker-dealer.

### THE RELIEF DEFENDANT

16. **Clean Care Systems, LLC** purports to be a limited liability company owned, until December 2007, entirely by Klein and one investor, ("Investor A"). Systems' current principal place of business is 1413 Chestnut Avenue, Hillside, New Jersey 07205. Pursuant to a settlement of private litigation involving Systems, CCT and Klein, Systems took possession in or around December 2007 of all assets to which CCT claimed possible ownership, including an inventory of Eyegiene toilet seats and cleaning fluid and the purported right to be the exclusive

distributor of the Eyegiene seat and fluid.

## FACTS

### Defendants Unlawfully Sold Securities Through Unregistered Offerings.

17. In or about January 2006, Defendants Klein and Systems purportedly obtained the rights to distribute and market the "Eyegiene" toilet seat in the United States from NTF Eyegiene, a Dutch manufacturer of the seats. Thereafter, Klein sought to obtain investors to build his business and develop a distributor network.

18. To that end, Klein retained Nazon and Varughese to raise money for his self-cleaning toilet seat venture, then known as Systems.

19. Nazon owned a company known as Focus Marketing, which appears to have operated as a boiler-room and was in the business of soliciting investors for questionable businesses using high pressure sales tactics and cold-calling. Nazon and Varughese had worked together previously selling securities through unregistered and improper transactions.

20. Nazon and Varughese, assuming the fake name Robert Clark, contacted Investor A to solicit an investment in Systems. Nazon and Varughese had previously solicited an investment from Investor A for a different venture in which Investor A lost all of his investment. Nazon and Varughese represented to Investor A that Clean Care would be an opportunity for Investor A to make back his money. After meeting with Klein, Investor A agreed to invest up to $3 million in Systems but insisted on being the sole investor in the company.

21. Thereafter, Investor A transferred approximately $1.5 million to Klein. Klein met with Investor A and communicated with him by email. In these communications, Klein falsely represented that Systems had obtained contracts for the sale of toilet seats and cleaning fluid.

6

22. Concerned that he needed to raise more than the $1.5 million provided by Investor A, Klein decided to set up another entity, CCT, to be able to raise money from other investors without letting Investor A know that Klein was bringing in additional investors.

23. In approximately April 2006, Klein, Nazon and Varughese assembled the CCT POM, and CCT commenced an unregistered offering of securities to investors. CCT purported to offer investors 100 units comprised of 40,000 series A preferred limited liability membership interests in CCT. Defendants intended to raise $10 million and represented that units would only be sold to accredited investors or investors "who are otherwise knowledgeable, experienced and 'sophisticated' in business and financial matters."

24. Defendants sold shares of CCT to the investing public by making unsolicited cold calls to investors, to whom they provided, among other documents, the POM. Nazon and Varughese used false names, such as Robert Clark, to solicit investors and cold called investors in at least five states. Klein provided Nazon and Varughese with marketing materials to provide to investors, and in at least one instance met with an investor to make a sales pitch.

25. For example, Defendants procured a $98,500 investment from an 84 year old retiree in Lawrenceville, Georgia ("Investor B") by making an unsolicited call to him. Investor B was told that he was dealing with Robert Clark, rather than Defendants Nazon or Varughese, that CCT would go public at $25 per share, and that CCT would soon pay a dividend. Investor B was not an accredited investor.

26. Defendants raised approximately $717,000 from the sale of CCT shares to approximately 26 investors and approximately $1.5 million through the sale of Systems shares to Investor A.

27. Defendants did not file a registration statement for their sales of securities, and a registration statement was not otherwise in effect. The offering therefore violated Section 5 of the Securities Act.

28. In fact, Defendants state in the CCT POM that the CCT securities "have not been registered under the Securities Act of 1933 ... [or] any securities regulatory authority... ." Defendants state in the CCT POM that CCT shares were sold "in reliance upon the availability of an exemption from the registration provisions of the Securities Act ... ." Specifically, the POM states that "it is intended that this offering comply with the provisions of Section 4(2) of the Securities Act and Rule 506 of Regulation, (sic) C.F.R.250.501 et. seq. ... and that the units be offered and sold to a limited number of investors who constitute either 'accredited investors' within the meaning of Regulation D or who are otherwise knowledgeable, experienced and 'sophisticated' in business and financial matters."

29. The offerings however, do not satisfy the requirements necessary to be exempt from registration under federal securities law due to, *inter alia*, the investors' relative lack of sophistication and the size and manner of the offerings. Defendants engaged in a general, public solicitation of Clean Care Securities, did not provide any financial statements to investors and took no steps to determine investors' level of knowledge, experience and sophistication.

**Defendants Fraudulently Misrepresented and Omitted Numerous Material Facts in Connection with Their Marketing and Sale of Systems and CCT Shares.**

30. Defendants made blatant misrepresentations and omitted material facts in selling Clean Care Securities. For example, Defendants misrepresented through the CCT POM that "[t]here will not be any commissions payable or paid in connection" with the CCT Offering. But

Nazon and Varughese received undisclosed commissions of up to 30% of money they raised through sales of Clean Care Securities, including the CCT shares described in the CCT POM.

31.     Defendants also published false press releases announcing significant sales of Clean Care toilet seats at times when CCT had yet to sell a single seat. For example, Defendants published a July 1, 2006 CCT press release stating that CCT "has managed to make sales to several major corporate entities." Klein has since admitted that none of the entities listed in that press release had purchased any seats from CCT. Approximately six months later, on January 5, 2007, while the offering was ongoing, CCT published another press release announcing that "CCT has signed on numerous dealers including the Las Vegas Towel and Linen Company, which services sixty percent of all hotels in the Las Vegas Area." These statements, as Defendants have admitted, were patently false as well.

32.     Defendants expressly represented in the CCT POM that CCT "exclusively distributes and markets the Eyegiene Seat ... in the United States." At or around the same time, Klein solicited investment from Investor A by telling him that *Systems* was the exclusive distributor of the Eyegiene seat in the United States. Defendants have since admitted that the statements in the CCT POM concerning CCT's purported role as an exclusive Eyegiene Seat distributor were false.

33.     Defendants' use of two Clean Care entities to raise money also involved additional deception of investors. For example, Defendants never disclosed to investors in CCT or Systems that money raised through the sale of securities in the two companies would be commingled and used to cover the other company's expenses whenever Defendants so chose.

34.     Defendants also represented in the CCT POM that "the Company has contracts

9

with two manufacturers, who will be providing the Eyegiene and CleanCare Systems to CleanCare Technologies... ." This statement was false, as Defendants have since admitted. The distribution contract for Eyegiene belonged exclusively to Clean Care Systems, not Clean Care Technologies.

35. Additionally, Defendants represented in the CCT POM that the "offer and sale of the [CCT] Units made through broker-dealers who are registered with the National Association of Securities Dealers, Inc. is 10% from the Company (sic)." But Defendants have admitted that no broker-dealer registered with the National Association of Securities Dealers, Inc. – or any other regulatory body – was ever employed by CCT or Systems. And Defendants Nazon and Varughese were paid commissions in excess of 10% by Klein, acting on behalf of the Company, for money raised through the Offerings.

**Defendants Nazon and Varughese, Aided and Abetted by Defendant Klein, sold Clean Care Securities in Violation of Section 15(a) of the Exchange Act.**

36. None of the Defendants are, nor have they ever been, registered as, or associated with, a registered broker-dealer.

37. Nazon and Varughese sold Clean Care Securities to numerous investors and collected commissions approaching 30% of money raised from investors in Clean Care Securities.

38. As part of their marketing and sale of Clean Care Securities, Nazon and Varughese actively solicited and sought investors and made representations to investors concerning the purported value of the securities.

39. Furthermore, Nazon and Varughese admit to having sold securities of other

10

issuers despite their unregistered status.

40. Klein (i) employed Nazon and Varughese to market and sell Clean Care Securities; (ii) paid Nazon and Varughese commissions on the money raised through the sale of Clean Care Securities; (iii) provided Nazon and Varughese with materials to use in marketing the securities to investors and made himself available to speak with potential investors Nazon and Varughese identified; and (iv) knew or was reckless in not knowing that Nazon and Varughese were not registered as, or otherwise affiliated with, broker-dealers. In fact, Klein never even asked Nazon and Varughese if they were registered before hiring them to sell Clean Care Securities.

41. Clean Care Securities are penny stocks as defined in Section 3(a)(51) of the Securities Exchange Act of 1934 and Rule 3a51-1 thereunder. For instance, CCT and Systems have been in existence for less than three years. CCT had net tangible assets of approximately $300,000 and no revenues for 2006, the only year for which financial information is available. The Clean Care Securities were sold at a price of between $1 and $2.50 per unit, are not registered on a national exchange, are not issued by a registered investment company and are not authorized for quotation on NASDAQ.

## FIRST CLAIM FOR RELIEF

**Violations of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a),
Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b),
and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5**

(Against CCT, Klein, Nazon and Varughese)

42. The Commission repeats and realleges the allegations contained in paragraphs 1 through 41 by reference as if fully set forth herein.

43. The Defendants, directly and indirectly, singly and in concert, knowingly or recklessly, by the use of the means or instruments of transportation or communication in, and the means or instrumentalities of, interstate commerce, or by the use of the mails, in the offer or sale, and in connection with the purchase or sale, of securities, have: (a) employed devices, schemes or artifices to defraud; (b) obtained money or property by means of, or otherwise made untrue statements of material fact, or omitted to state material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, acts, practices and courses of business which operated or would operate as a fraud or deceit upon purchasers of securities or other persons.

44. By reason of the acts, omissions, practices, and courses of business set forth in this complaint, the Defendants singly or in concert, directly or indirectly, violated, and unless enjoined will again violate Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## SECOND CLAIM FOR RELIEF

**Violations of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a) and (c)**
(Against CCT, Klein, Nazon and Varughese)

45. The Commission realleges and incorporates paragraphs 1 through 41 by reference as if fully set forth herein.

46. The Defendants, directly and indirectly, singly and in concert, have made use of the means or instruments of transportation or communication in interstate commerce, or of the mails, to offer and sell securities through the use or medium of a prospectus or otherwise when no registration statement has been filed or was in effect as to such securities and when no

exemption from registration was available.

47. By reason of the foregoing, the Defendants singly or in concert, directly or indirectly, violated, and unless enjoined will again violate Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a) and (c).

### THIRD CLAIM FOR RELIEF

**Violations of Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a)**

(Against Nazon and Varughese)

48. The Commission realleges and incorporates paragraphs 1 through 41 by reference as if fully set forth herein.

49. Defendants Nazon and Varughese, directly and/or indirectly, singly and/or in concert, made use of the mails or means or instrumentalities of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of securities, without being registered as a broker or dealer or associated with a registered broker or dealer in accordance with Section 15(b) of the Exchange Act, 15 U.S.C. § 78o(b).

50. As part and in furtherance of the violative conduct, Nazon and Varughese actively and regularly solicited investors to purchase Clean Care Securities, and they advised investors about the merits of an investment in Clean Care Securities. Nazon and Varughese also received compensation based on their success in selling Clean Care Securities.

51. While they were engaged in this conduct, Nazon and Varughese were not registered as brokers or dealers, or associated with a registered broker or dealer.

52. By reason of the foregoing, Nazon and Varughese, singly and/or in concert, directly and/or indirectly, violated, and unless enjoined will again violate, Section 15(a) of the

Exchange Act, 15 U.S.C. § 78o(a).

## FOURTH CLAIM FOR RELIEF

### Aiding and Abetting Violations of Section 15(a) of the Exchange Act

(Against Klein)

53. The Commission realleges and incorporates paragraphs 1 through 41 and 49-52 by reference as if fully set forth herein.

54. Nazon and Varughese, directly or indirectly, singly or in concert, made use of the mails or means or instrumentalities of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of securities, without being registered as a broker or dealer or associated with a registered broker or dealer in accordance with Section 15(b) of the Exchange Act, 15 U.S.C. § 78o(b).

55. Klein retained Nazon and Varughese to sell Clean Care Securities to investors and knew that Nazon and Varughese were acting as brokers. Klein knew that Nazon and Varughese were soliciting investors to purchase Clean Care Securities.

56. Klein knowingly provided substantial assistance to Nazon and Varughese. For instance, Klein participated in drafting the POM with Nazon and Varughese and made himself available to and did meet with investors solicited by Nazon and Varughese. Klein also paid Nazon and Varughese exorbitant, undisclosed commissions to sell the Clean Care Securities to investors.

57. Pursuant to Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e), and by reason of the foregoing, Klein, directly and/or indirectly, aided and abetted and unless enjoined will again violate Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

## FIFTH CLAIM FOR RELIEF

(Against Systems As Relief Defendant)

58. The Commission realleges and incorporates paragraphs 1 through 41 by reference as if fully set forth herein.

59. Systems received, directly or indirectly, funds and/or other assets from the Defendants, which either are the proceeds of, or are traceable to the proceeds of, the unlawful activities alleged herein and to which it has no legitimate claim to these funds and assets.

60. Systems obtained the funds and assets as part of and in furtherance of the securities violations alleged and under circumstances in which it is not just, equitable, or conscionable for it to retain the funds and assets, and accordingly, Systems has been unjustly enriched by ill gotten gains.

61. The Commission is entitled to an order requiring that Systems disgorge these funds and assets plus prejudgment interest thereon.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Commission respectfully requests that this Court issue a Final Judgment:

### I.

Permanently enjoining the Defendants, their agents, servants, employees, attorneys in-fact, and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and

78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## II.

Permanently enjoining the Defendants, their agents, servants, employees, attorneys in-fact, and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a) and (c).

## III.

Permanently enjoining the Defendants Klein, Nazon and Varughese, their agents, servants, employees, attorneys in-fact, and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating, and aiding and abetting violations of, Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

## IV.

Permanently barring Defendants from participation in any offering of penny stock pursuant to Section 20(g) of the Securities Act, 15 U.S.C. § 77t(g), and Section 21(d)(6) of the Exchange Act, 15 U.S.C. § 78u(d)(6), including engaging in activities with a broker, dealer or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock.

## V.

Ordering the Defendants and Relief Defendant to each file with this Court and serve upon the Commission verified written accountings, signed by each of them under penalty of perjury.

**VI.**

Ordering the Defendants and Relief Defendant to disgorge their ill-gotten gains from the violative conduct alleged in this complaint, and to pay prejudgment interest thereon.

**VII.**

Ordering Defendants to pay civil monetary penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

**VIII.**

Granting such other and further relief as the Court deems appropriate.

Dated: February 21, 2008
New York, New York

Respectfully Submitted,

_____
Mark K. Schonfeld
ATTORNEY FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center – Room 400
New York, New York 10281
(212) 336-1020

Of Counsel:

Andrew M. Calamari
Doria Bachenheimer
Valerie Szczepanik
Meaghan Cheung
Michael Paley
Michael Birnbaum