UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,  :
                                                  :

                             Plaintiff,  :

                                                 :

   -against-  :

                                               :

CLEAN CARE TECHNOLOGIES, INC.,  :
EDWARD KLEIN, AL NAZON and  :            08 Civ. 1719 (HB)
ANIL VARUGHESE,  :            ECF CASE

                                           :

                        Defendants,  :

                                           :

            and  :

                                           :

CLEAN CARE SYSTEMS, LLC,  :

                                         :

                   Relief Defendant.  :

-----------------------------------------------------------------------x

## MEMORANDUM OF LAW
### IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
### AS TO DEFENDANT CLEAN CARE TECHNOLOGIES, INC.

Securities and Exchange Commission
New York Regional Office
3 World Financial Center, Room 400
New York, NY  10281-1022
Valerie A. Szczepanik
Michael D. Birnbaum
Attorneys for Plaintiff
Ph: (212) 336-1100
Fx: (212) 336-1317
szczepanikv@sec.gov
birnbaumm@sec.gov

## TABLE OF CONTENTS

INTRODUCTION................................................................................................1

STATEMENT OF FACTS ...............................................................................2

    I.    CCT Has Failed to Respond to the Complaint .......................................2

    II.   The Complaint's Uncontested Allegations and Facts............................2

ARGUMENT ......................................................................................................5

    I.    The Court Should Order Default Judgment Against CCT .....................6

        A.    Default Judgment Standard .........................................................6

        B.    CCT Was Properly Served with the Summons and Complaint and
            Failed to Appear, Answer or Otherwise Respond .........................6

    II.   The Complaint Establishes CCT's Liability.........................................7

        A.    CCT Violated Sections 5(a) and 5(c) of the
            Securities Act ...............................................................................7

        B.    CCT Violated Section 17(a) of the Securities Act, Section
            10(b) of the Exchange Act, and Exchange Act Rule 10b-5..........9

    III.   The Court Should Order the Commission's Requested Relief
         Against CCT .......................................................................................11

        A.    The Court Should Permanently Enjoin CCT From Future
            Violations of the Federal Securities Laws .................................11

        B.    The Court Should Impose a Penny Stock Bar on CCT .............12

        C.    The Court Should Order CCT to Disgorge its Ill-Gotten
            Gains Plus Prejudgment Interest Thereon .................................13

        D.    The Court Should Order Civil Penalties Against CCT .............15

CONCLUSION................................................................................................17

## TABLE OF AUTHORITIES

**CASES**

Aaron v. SEC, 446 U.S. 680 (1980) .................................................................9

Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61 (2d Cir. 1981) .......................6, 7

Bermudez v. Reid, 733 F.2d 18 (2d Cir. 1984) ................................................6, 7

Brandstein v. White Lamps, Inc., 20 F. Supp. 369 (S.D.N.Y. 1937) ...................6

Chill v. General Elec. Co., 101 F.3d 263 (2d Cir. 1996) ...................................10

Cotton v. Slone, 4 F.3d 176 (2d Cir. 1983) ......................................................6, 7

Ernst & Ernst v. Hochfelder, 425 U.S. 185 (1976) .............................................9

Fustok v. Conticommodity Servs., Inc., 873 F.2d 38 (2d Cir. 1989) ..................14

Herman & MacLean v. Huddleston, 459 U.S. 375 (1983) ........................... 9-10

Johnston v. Bumba, 764 F. Supp. 1263 (N.D. Ill. 1991) ................................. 8-9

Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20 (2d Cir. 1983) ................6

SEC v. Benson, 657 F. Supp. 1122, 1132-33 ....................................................11

SEC v. Cavanagh, 155 F.3d 129 (2d Cir. 1998) ....................................7-8, 11-12

SEC v. Colonial Inv. Mgmt. LLC, 2008 U.S. Dist. LEXIS 41442 (S.D.N.Y. May
    23, 2008) .....................................................................................................12

SEC v. Commonwealth Chem. Secs., Inc., 574 F.2d 90 (2d Cir. 1978) ...........11

SEC v. First City Fin. Corp., 890 F.2d 1215 (1989) ...........................13, 14, 15

SEC v. First Jersey Sec., Inc., 890 F. Supp. 1185 (S.D.N.Y. 1995), rev'd on other
    grounds 101 F.3d 1450 (2d Cir. 1996) .......................................................13

SEC v. First Jersey Sec., Inc., 101 F.3d 1450 (2d Cir. 1996) ................... 9, 14-15

SEC v. First Pac. Bancorp, 142 F.3d 1186 (9th Cir. 1998) ...............................13

SEC v. Franco, 253 F. Supp. 2d 720 (S.D.N.Y. 2003) ......................................................10

SEC v. Haligiannis, 470 F. Supp. 2d 373 (S.D.N.Y. 2007)..............................................15

SEC v. Hansen, 1984 U.S. Dist. LEXIS 17835 (S.D.N.Y. Apr. 6, 1984)...........................7

SEC v. Inorganic Recycling Corp., 2002 U.S. Dist. LEXIS 15817 (S.D.N.Y. Aug.
    23, 2002) .........................................................................................................15, 16

SEC v. Interlink Data Network, 1993 U.S. Dis. LEXIS 20163 (C.D. Cal. Nov. 15,
    1993) ........................................................................................................................11

SEC v. Management Dynamics, Inc., 515 F.2d 801, 814 (2d Cir. 1975) ..........................11

SEC v. Manor Nursing Ctr., Inc., 458 F.2d 1082 (2d Cir. 1972)................................10, 11

SEC v. McNulty, 137 F.3d 732 (2d Cir. 1998)............................................................10, 11

SEC v. Moran, 944 F. Supp. 286 (S.D.N.Y. 1996)..........................................................15

SEC v. Murphy, 626 F.2d 633 (9th Cir. 1980) ..................................................................8

SEC  v. North Am. Research & Dev. Corp., 424 F.2d 63 (2d Cir. 1970).........................10

SEC v. Opulentica, 479 F. Supp. 2d 319 (S.D.N.Y. 2007)........................................15, 16

SEC v. Patel, 61 F.3d 137 (2d Cir. 1995) ........................................................................14

SEC v. Ralston Purina Co., 346 U.S. 119 (1953) ..............................................................8

SEC v. Softpoint, 958 F. Supp. 846 (S.D.N.Y. 1997) ...................................................7, 13

SEC v. Universal Major Indus. Corp., 546 F.2d 1044 (2d Cir. 1976) ..............................12

SEC v. Warde, 151 F.3d 42 (2d Cir. 1998)........................................................................14

Shah v. New York State Dep't of Civ. Serv., 168 F.3d 610 (2d Cir. 1999) ........................6

Superintendent of Ins. v. Bankers Life & Cas. Co., 404 U.S. 6 (1971) ..............................9

TSC Indus. v. Northway, Inc., 426 U.S. 438 (1976)............................................................9

United States v. Naftalin, 441 U.S. 768 (1979) ..................................................................9

## STATUTES

15 U.S.C. § 77d(2) ................................................................................................8

15 U.S.C. § 77e(a) ........................................................................................1, 5, 7

15 U.S.C. § 77e(c) .........................................................................................1, 5, 7

15 U.S.C. § 77q(a) .............................................................................................1, 5

15 U.S.C. § 77t(b) ................................................................................................11

15 U.S.C. § 77t(d) .........................................................................................15, 16

15 U.S.C. § 78j(b) ..............................................................................................1, 5

15 U.S.C. § 78u(d) ...................................................................................11, 15, 16

## OTHER

17 C.F.R. § 201.1001 ...........................................................................................16

17 C.F.R. § 240.3a51-1 ........................................................................................13

17 C.F.R. 240.10b-5 ..........................................................................................1, 5

Rule 506 of Regulation D .......................................................................................8

Fed. R. Civ. P. 55 ...................................................................................................6

Local Civil Rule 55.2(b) .........................................................................................6

## INTRODUCTION

Plaintiff Securities and Exchange Commission (the "Commission") respectfully submits this Memorandum of Law in support of its motion for default judgment against Clean Care Technologies, Inc. ("CCT"), pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Civil Rule 55.2(b). A judgment by default is appropriate against CCT because CCT was properly served with a summons and a copy of the Complaint, but has failed to answer, plead or otherwise defend this action, as required by the Federal Rules and the Local Civil Rules of this Court. Additionally, no attorney has entered an appearance on CCT's behalf, and CCT cannot appear *pro se*. Accordingly, the Commission seeks the entry of judgment by default against CCT.

The Complaint adequately alleges that CCT violated the federal securities laws by, among other things, engaging in a fraudulent fundraising scheme through an unregistered offering of securities. Accordingly, the Commission requests that the Court enter a judgment by default against CCT that would: (1) permanently enjoin CCT from future violations of Sections 5 and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e and 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. 240.10b-5]; (2) permanently bar CCT from participating in any offering of penny stock; (3) order CCT to disgorge its ill-gotten gains plus prejudgment interest thereon; and (4) order CCT to pay a civil monetary penalty.

## STATEMENT OF FACTS

### I.    CCT Has Failed to Respond to the Complaint

The Commission commenced this action on February 21, 2008, with the filing of its Complaint and the issuances of summonses. (Declaration of Teresa Rodriguez ("Rodriguez Decl.") ¶ 4 & Ex. 1.) Also, on February 21, 2008, the Commission effected proper service of the summons and Complaint upon defendant CCT. (Id. ¶ 6 & Ex. 3.) CCT's answer was due no later than March 12, 2008. (Id. at Ex. 4) On March 24, 2008, CCT had not filed an answer to the Commission's Complaint and, during a Court Conference, the Honorable Judge Harold Baer extended CCT's time to respond to the Complaint until April 11, 2008. (Id.) The April 11, 2008 deadline to answer or otherwise respond to the Commission's Complaint has lapsed. Accordingly, on June 5, 2008, the Clerk of the Court noted CCT's default and issued a Certificate of Default against CCT. (Id.)

### II.    The Complaint's Uncontested Allegations and Facts

CCT is in default; therefore, the allegations in the Complaint as to CCT should be deemed uncontested. As specified in the Complaint, from approximately March 2006 through July 2007, CCT, Edward Klein ("Klein"), Al Nazon ("Nazon") and Anil Varughese ("Varughese") (collectively, "Defendants") engaged in a deceitful and fraudulent scheme to raise funds through an unregistered offering and sale of securities of CCT and Clean Care Systems ("Systems") (together, "Clean Care Securities"). (Rodriguez Decl. ¶ 4 & Ex. 1 ¶¶ 1-41.) The fraudulent scheme involved: (1) the marketing and sale of Clean Care Securities through an unregistered offering in violation of the registration provisions of the federal securities laws (id. at Ex. 1 ¶¶ 1, 17-29); (2) the dissemination of false and misleading information in connection with the offering and sale of Clean Care Securities through a private offering memorandum

2

("POM") and press releases (id. at Ex. 1 ¶¶ 1-4, 30-35); and (3) the payment of undisclosed commissions to unregistered brokers in exchange for the brokers' solicitation of Clean Care Securities (id. at Ex. 1 ¶¶ 5, 35-40). As a result of the fraudulent scheme, Defendants raised approximately $2 million by defrauding at least 27 unsuspecting investors. (Id. at Ex. 1 ¶ 26.)

The scheme began on or about January 2006, when Defendants Klein, Nazon and Varughese endeavored to raise money for a self-cleaning toilet seat venture, then known as Systems. (Id. at Ex. 1 ¶¶ 16-18.) Systems purportedly obtained the rights to distribute and market the "Eyegiene" toilet seat in the United States from NTF Eyegiene, a Dutch manufacturer of the seats. (Id. at Ex. 1 ¶¶ 16-17.) Neither Klein, Nazon nor Varughese were registered brokers-dealers or were associated with any registered broker-dealer. (Id. at Ex. 1 ¶¶ 13-15.) In their attempt to raise funds for Systems, Klein, Nazon and Varughese solicited an agreement to invest up to $3 million in Systems from one individual investor, Dr. Sheldon Schwartz (identified as "Investor A" in the Complaint.) (Id. at Ex. 1 ¶ 20.) Schwartz invested in Systems with the caveat that he be the sole investor in Systems. (Id.) Schwartz then transferred approximately $1.5 million to Klein. (Id. at Ex. 1 ¶ 21.)

Klein then established another entity to raise capital – CCT – which purported to hold the same "exclusive" license to distribute and market the Eyegiene toilet seat as Systems. (Id. at Ex. 1 ¶ 22, 32.) Schwartz, the sole investor in Systems, did not know of the existence of CCT, nor did CCT investors know about the existence of Systems. (Id. at Ex. 1 ¶¶ 22, 33.)

In or about April 2006, intending to raise $10 million dollars, defendants Klein, Nazon and Varughese assembled a POM for CCT and commenced an unregistered offering of securities to investors. (Id. at Ex. 1 ¶¶ 23, 27-29.) They sold shares of CCT to the public by making unsolicited cold calls to investors, sometimes from an office in lower Manhattan. (Id. at Ex. 1 ¶¶

3

14-15, 24.) In connection with their sale of securities to CCT investors, Klein, Nazon and

Varughese engaged in a range of deceitful practices, among them, using false names and

providing patently false information to potential investors through the POM and press releases.

(Id. at Ex. 1 ¶¶ 24, 30-35.) For example, Defendants procured a $98,500 investment from an 84

year old unaccredited retiree, through an unsolicited call, during which the investor was given a

false name, misled through false information that CCT would go public at $25 per share, and told

that CCT would soon pay a dividend. (Id. at Ex. 1 ¶ 25.) Klein, Nazon and Varughese raised

approximately $717,000 from the sale of CCT shares to approximately 26 investors through their

fraudulent scheme. (Id. Ex. 1 ¶ 26.)

    Defendants made the following misrepresentations and omissions, among others, to

investors:

- CCT's POM stated that CCT exclusively distributes and markets the Eyegiene Seat in the United States. However, Defendants have admitted that this statement was false (id. at Ex. 1 ¶ 32);

- Defendants never disclosed the existence of the two companies – CCT and Systems – to investors in CCT or Systems, or that both CCT and Systems claimed to hold the same "exclusive" license, or that money raised through the sale of securities in the two companies would be commingled and used to cover the other company's expenses and to benefit Klein, Nazon and Varughese (id. at Ex. 1 ¶¶ 2, 33);

- in press releases, Defendants announced among other things: (a) significant sales of Clean Care toilet seats at times when CCT had yet to sell a single seat; and (b) that CCT had signed-on numerous dealers, servicing sixty percent of hotels in the Las Vegas area. Defendants have admitted that these are false statements (id. at Ex. 1 ¶ 31);

- CCT's POM stated that there would be no commissions payable or paid in connection with the CCT Offering; however, Nazon and Varughese received undisclosed commissions (id. at Ex. 1 ¶ 30);

- CCT's POM stated that the "offer and sale of the [CCT] Units made through broker-dealers who are registered with the National Association of Securities Dealers, Inc. is 10% from the Company (sic)." But Defendants have admitted that no broker-dealer

4

registered with the National Association of Securities Dealers, Inc. – or any other regulatory body – was ever employed by CCT or Systems. Further, defendants Nazon and Varughese were paid commissions in excess of 10% for money raised through the offering (id. at Ex. 1 ¶ 35); and

- CCT's POM stated that the CCT offering, while unregistered, was being made in reliance upon the exemption from the registration provisions of the Securities Act. (Id. at Ex. -- ¶ 28.) The offering however, was not exempt from registration. (Id. at Ex. 1 ¶ 29).

CCT and Systems securities are penny stocks as defined in Section 3(a)(51) of the Exchange Act and Exchange Act Rule 3a51-1. (Rodriguez Decl. ¶ 4 & Ex. 1 ¶ 41.) At the time of the conduct alleged, CCT and Systems had been in existence for less than three years. CCT had net tangible assets of approximately $300,000 and no revenues for 2006. Clean Care Securities were sold at a price of between $1 and $2.50 per unit, are not registered on a national exchange, are not issued by a registered investment company and are not authorized for quotation on NASDAQ. (Id.)

## ARGUMENT

The Court should enter default judgments against CCT due to its failure to answer or otherwise respond to the Commission's Complaint. The Complaint charges CCT with violation of the registration and antifraud provisions of the federal securities laws, Sections 5(a), 5(c) and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c) and 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Exchange Act Rule 10b-5 [17 C.F.R. 240.10b-5]. (Rodriguez Decl. ¶ 4 & Ex. 1 ¶ 6.) The Complaint, which must be deemed conceded, sets forth sufficient factual allegations to support the Commission's charges against CCT and the Commission's request for a permanent injunction, penny stock bar, disgorgement plus prejudgment interest, and civil money penalties. (Id. at Ex. 1 ¶¶ 1-41.)

5

I.     **The Court Should Order Default Judgment Against CCT**

    A.     Default Judgment Standard

A judgment by default may be entered where a party fails to plead or otherwise respond

or defend. Fed. R. Civ. P. 55; Local Civil Rule 55.2(b). The entry of a default judgment is

within the sound discretion of the district court. Shah v. New York State Dept. of Civ. Serv., 168

F.3d 610, 615 (2d Cir. 1999). "[W]here a party fails to respond, after notice the court is

ordinarily justified in entering a judgment against the defaulting party ... ." Bermudez v. Reid,

733 F.2d 18, 21 (2d Cir. 1984) (citing Fed. R. Civ. P. 55(b)(2)). A party's default is deemed to

constitute a concession of all the factual allegations of the complaint concerning liability. Cotton

v. Slone, 4 F.3d 176, 181 (2d Cir. 1983); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d

Cir. 1981).

    B.     CCT Was Properly Served with the Summons and Complaint
        and Failed to Appear, Answer or Otherwise Respond

The Commission properly served CCT with the summons and Complaint in this matter

on February 21, 2008. (Rodriguez Decl. ¶ 6 & Ex. 3.) Despite proper service, and the Court's

extension of time to accommodate the filing of Answers in this case, CCT has nonetheless failed

to plead, respond or otherwise defend this action. (Id.)

Furthermore, it is well-established that "a corporation, which is an artificial entity that can

only act through agents, cannot proceed pro se." Jones v. Niagara Frontier Transp. Auth., 722

F.2d 20, 22 (2d Cir. 1983); Brandstein v. White Lamps, Inc., 20 F. Supp. 369, 370 (S.D.N.Y.

1937) ("Since a corporation can appear only through its agents, they must be acceptable to the

court; attorneys at law, who have been admitted to practice, are officers of the court and subject

to its control"). No attorney has appeared for CCT in this case.

CCT should not be permitted to evade the consequences of their unlawful conduct by ignoring this lawsuit. Accordingly, a judgment by default is appropriate. See Bermudez, 733 F.2d at 21 ("where a party fails to respond, after notice the court is ordinarily justified in entering a judgment against the defaulting party.").

## II.    The Complaint Establishes CCT's Liability

The legal effect of a default judgment is to establish conclusively that the violations alleged in the Complaint did indeed occur; thus, because CCT is in default, the Court should accept as true all the factual allegations of the Complaint, except those relating to damages. See Cotton, 4 F.3d at 181; Au Bon Pain, 653 F.2d at 65. The detailed allegations in the Complaint, deemed true, establish CCT's liability for violating the federal securities laws and establish the appropriateness of the remedies sought against CCT by the Commission. See Au Bon Pain, 653 F.2d at 65.

### A.    CCT Violated Sections 5(a) and 5(c) of the Securities Act

Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)] generally prohibit the use of the mails or interstate means to offer or sell, directly or indirectly, any security unless a registration statement is in effect as to that security, or an exemption from the registration provisions applies. See 15 U.S.C. §§ 77e(a) and 77e(c). A *prima facie* showing that the registration provisions have been violated requires proof that: (1) the defendant offered to sell or sold a security; (2) the defendant used the mails or interstate means in connection with the offer or sale; and (3) no registration statement was in effect as to the security. SEC v. Hansen, 1984 U.S. Dist. LEXIS 17835, at *9 (S.D.N.Y. Apr. 6, 1984). The Commission is not required to prove scienter to show a Section 5 violation. SEC v. Softpoint, 958 F. Supp. 846, 859-60 (S.D.N.Y. 1997). Once the *prima facie* showing is made, the defendant has the burden of

7

showing that for some reason Sections 5(a) and 5(c) do not apply to them. <u>SEC v. Cavanagh</u>, 155 F.3d 129, 133 (2d Cir. 1998).

Defendants solicited sales of Clean Care Securities and did so using the mails and interstate means. (Rodriguez Decl. at ¶ 4 & Ex. 1 ¶¶ 11, 14-15, 21, 25.) There is no registration statement on file or in effect for the offering of any CCT or Systems securities. (<u>Id.</u> at Ex. 1 ¶ 27.) Thus, CCT's offer and sale of Clean Care Securities violated Section 5.

Exemptions from the registration provisions are set forth in Sections 3 and 4 of the Securities Act, and the rules promulgated thereunder; however, these are merely safe harbor exemptions, and a person who offers or sells a security in reliance on them must establish that an exemption applies. <u>SEC v. Ralston Purina Co.</u>, 346 U.S. 119, 126 (1953). In addition, "these exemptions from registration provisions are construed narrowly in order to further the purpose of the Act: 'To provide full and fair disclosure of the character of the securities, ... and to prevent frauds in the sale thereof.'" <u>SEC v. Murphy</u>, 626 F.2d 633, 640 (9th Cir. 1980) (quoting the Securities Act).

CCT stated in its POM that the CCT offering was "intended to comply with the provisions of Section 4(2) of the Securities Act and Rule 506 of Regulation, (sic) C.F.R.250.501 et seq." (Rodriguez Decl. ¶ 4 & Ex. 1 ¶ 28.) These provisions exempt certain private and limited offerings. <u>See</u> 15 U.S.C. § 77d(2) & Rule 506 of Regulation D. However, CCT's offering was not exempt from registration under federal securities law due to, *inter alia*, the investors' relative lack of sophistication, the size and manner of the offerings, the general public solicitation of investors, and the failure of Defendants to provide financial statements or to ascertain investors' level of sophistication (Rodriguez Decl. ¶ 4 & Ex. 1 ¶ 29). <u>See Johnston v. Bumba</u>, 764 F. Supp. 1263, 1274-75 (N.D. Ill. 1991) (exemption from registration is not available if a security is sold

8

by means for any form of general solicitation).

      B.      CCT Violated Section 17(a) of the Securities Act,
                    Section 10(b) of the Exchange Act, and Exchange Act Rule 10b-5

Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5 prohibit fraud in connection with the purchase or sale of securities. United States v. Naftalin, 441 U.S. 768, 772, 778 (1979). To establish a violation of Section 10(b) and Rule 10b-5, the Commission must show (i) a misrepresentation or omission regarding material facts or other fraudulent conduct, (ii) made with scienter, (iii) in connection with the purchase or sale of a security. SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1476 (2d Cir. 1996) (citation omitted). With respect to Section 17(a)(1) of the Securities Act, essentially the same elements must be established in connection with the offer or sale of a security, though no showing of scienter is required under subsections 17(a)(2) or (a)(3). See Aaron v. SEC, 446 U.S. 680, 696-97, 701-02 (1980).

A statement or omission is material if a reasonable investor would view its disclosure as significantly altering the 'total mix' of information available. TSC Indus. v. Northway, Inc., 426 U.S. 438, 449 (1976). Summary judgment on matters of materiality in a securities fraud case is appropriate when the omissions and misrepresentations in question are "so obviously important to an investor that reasonable minds cannot differ." Id., 426 U.S. at 438. The requirement under Section 10(b) and Rule 10b-5 that a fraud be perpetrated "in connection with" the sale of securities is satisfied when the fraud touches the sale of securities. Superintendent of Ins. v. Bankers Life & Cas. Co., 404 U.S. 6, 12 (1971).

Section 17(a)(1) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 also require proof of scienter, or "a mental state embracing intent to deceive, manipulate, or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 (1976). Proof of scienter can be

inferred from circumstantial evidence. Herman & MacLean v. Huddleston, 459 U.S. 375, 390-91 n.30 (1983). Scienter also "may be established through a showing of a reckless disregard for the truth." SEC v. McNulty, 137 F.3d 732, 741 (2d Cir. 1998) (citation omitted). An egregious refusal to see the obvious, or to investigate the doubtful, may give rise to an inference of recklessness. Chill v. General Elec. Co., 101 F.3d 263, 269 (2d Cir. 1996). Since corporate defendants are not capable of possessing a mental state, for purposes of establishing scienter, the state of mind of their agents is imputed to them. SEC v. Manor Nursing Ctr., Inc., 458 F.2d 1082, 1089 n.3 & 1096 n.17 (2d Cir. 1972) (two corporate defendants liable for violations of antifraud provisions because they were "corporate embodiments" of an individual defendant "and his awareness of the securities laws violations [is] imputed to them"); SEC v. North Am. Research & Dev. Corp., 424 F.2d 63, 79 (2d Cir. 1970) (court upheld liability of corporation for violations of the antifraud provisions where "corporation [ ] was little more than the personification" of individual defendant and others); SEC v. Franco, 253 F. Supp. 2d 720, 729 (S.D.N.Y. 2003) ("[C]orporation can act only through the actions of natural persons and ... actions of its agents, acting within the scope of their agency, are attributed to the corporation.") (citing cases).

The allegations in the Complaint, deemed true upon default, adequately allege that the Defendants participated in an illegal plot to defraud investors in connection with the offer and sale of Clean Care Securities. (Rodriguez Decl. at ¶ 4 & Ex. 1 ¶¶ 1-41.) Defendants knowingly made numerous material misrepresentations and omissions to investors in order to persuade them to purchase Clean Care Securities, and made certain of the most egregious ones in CCT's POM and press releases, concerning, among other things, the nature of CCT's licensing rights and sales that were never consummated. (Id. at Ex. 1 ¶¶ 30-35.) These misrepresentations are

unquestionably material, as they relate to the very essence and viability of CCT's purported

business, specifically its ownership of a license to distribute and market, and the ability to sell, its

only product. CCT, through its agents Klein, Nazon and Varughese, violated the anti-fraud

provisions of the federal securities laws.

**III.    The Court Should Order the Commission's Requested Relief Against CCT**

      A.    The Court Should Permanently Enjoin CCT From Future
             Violations of the Federal Securities Laws

The Complaint's allegations amply support the Commission's request for an order

permanently enjoining CCT from future violations of the federal securities laws. The authority

of a federal district court to order permanent injunctive relief in a Commission enforcement

action is well established, see, e.g., SEC v. Commonwealth Chem. Secs., Inc., 574 F.2d 90, 99-

100 (2d Cir. 1978), and permanent injunctions may be ordered as part of a judgment by default

upon a finding by the Court that a factual basis for such relief exists, see, e.g., McNulty, 137 F.3d

at 736-37; SEC v. Management Dynamics, Inc., 515 F.2d 801, 814 (2d Cir. 1975). In the context

of a default judgment, the "factual allegations of the complaint are taken as true" and, thus, "it is

appropriate that the Court . . . enter findings of fact and conclusions of law." See, e.g., SEC v.

Interlink Data Network, 1993 U.S. Dist. LEXIS 20163, at *29 (C.D. Cal. Nov. 15, 1993).

Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Section 21(d) of the

Exchange Act [15 U.S.C. § 78u(d)] authorize permanent injunctive relief upon a showing that (1)

violations of the securities laws have occurred, and (2) a reasonable likelihood exists that

violations will occur in the future. Commonwealth, 574 F.2d at 99-100; Manor Nursing, 458

F.2d at 1100-1101; SEC v. Benson, 657 F. Supp. 1122, 1132-33 (S.D.N.Y. 1987). To determine

whether a reasonable likelihood of future violations exists, courts generally consider: (i) the

egregiousness of the conduct; (ii) the isolated or recurrent nature of the infraction; (iii) the degree of scienter involved; (iv) the sincerity of the defendant's assurances (if any) against future violations; and (v) the defendant's recognition (if any) of the wrongful nature of his conduct. Cavanaugh, 155 F.3d at 135; SEC v. Universal Major Indus. Corp., 546 F.2d 1044, 1048 (2d Cir. 1976).

Defendant CCT -- through Klein, Nazon and Varughese -- engaged in numerous and egregious securities law violations with a high degree of scienter.  CCT knowingly and deliberately orchestrated and carried out a scheme to defraud CCT and Systems' investors. (Rodriguez Decl. at ¶ 4 & Ex. 1 ¶¶ 1-41.)  CCT distributed a POM and press releases, rife with knowingly and materially false representations and omissions.  (Id. at Ex. 1 ¶¶ 30-35.)  In so doing, CCT defrauded at least 27 investors of approximately $2 million.  (Id. at Ex. 1 ¶ 26.)  In fact, CCT was created for the very purpose of deceiving investors.  (Id. at Ex. 1 ¶2.)  The breadth of this illegal scheme, and the high degree of scienter involved, establish a reasonable likelihood that, absent appropriate safeguards, defendant CCT will continue to violate the federal securities laws.  This Court should permanently enjoin CCT from any such future violations.  See SEC v. Colonial Inv. Mgmt. LLC, 2008 U.S. Dist. LEXIS 41442, at *7-8 (S.D.N.Y. May 22, 2008) (collecting Second Circuit cases granting injunctive relief based on allegations of past violations).

B.      The Court Should Impose a Penny Stock Bar on CCT

The Commission also seeks a penny stock bar against CCT.  CCT "participat[ed] in an offering of penny stock," as defined in Section 20(g)(2) of the Securities Act and 21(d)(6)(B) of the

Exchange Act, because it engaged in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of CCT securities.[1]

When deciding to impose a penny stock bar, the court looks at similar factors as those which govern the imposition of an injunction, including: (1) the egregiousness of the underlying securities law violation; (2) the defendant's repeat offender status; (3) the defendant's role or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur. SEC v. First Pac. Bancorp, 142 F.3d 1186, 1193 (9th Cir. 1998). For the same reasons that injunctive relief here is warranted, the Commission respectfully requests a penny stock bar against CCT.

> C.     The Court Should Order CCT To Disgorge Its Ill-Gotten Gains
>         Plus Prejudgment Interest Thereon

"Disgorgement of illicit profits is a proper equitable remedy for securities fraud." Softpoint, 958 F. Supp. at 867. "[T]he proper measure of disgorgement is the amount of the wrongdoer's unjust enrichment." Id. The Commission is not required to establish with certainty the amount to be disgorged; rather the Commission's burden is to come forward with a "reasonable approximation of profits causally connected to the violation." SEC v. First Jersey Sec., Inc., 890 F. Supp. 1185, 1211 (S.D.N.Y. 1995), rev'd on other grounds, 101 F.3d 1450 (2d Cir. 1996); SEC v. First City Fin. Corp., 890 F.2d 1215, 1231 (1989). Once the Commission has done so, the burden shifts to the defendant to come forward with evidence that the requested

---

[1] CCT securities are penny stocks because they do not fit within any of the exceptions from the definition of penny stock established by Section 3(a)(51) of the Securities Exchange Act of 1934 and Exchange Act Rule 3a51-1. See 17 C.F.R. § 240.3a51-1. For instance, CCT (and Systems) had net tangible assets and average revenue below the thresholds of Rule 3a51-1(g), the securities were priced at less than $5 (Rule 3a51-1(d)(1)), and the securities were not, among other things, NMS stocks as described in Rule 3a51-1(a). See id.

disgorgement is not a "reasonable approximation" of unjust enrichment. First City, 890 F.2d at

1232. If the measure of disgorgement is reasonable, the wrongdoer bears the risk of any

uncertainty in the disgorgement calculation. SEC v. Warde, 151 F.3d 42, 50 (2d Cir. 1998);

SEC v. Patel, 61 F.3d 137, 140 (2d Cir. 1995); First City, 890 F.2d at 1232. In the context of a

motion for default judgment, the Court may award disgorgement and prejudgment interest

without an evidentiary hearing where, as here, the record is sufficient to establish the

disgorgement amount. See Fustok v. Conticommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir.

1989) (detailed affidavits, documentary evidence and a judge's knowledge formed sufficient

basis for damages awarded in default judgment).

    The Commission seeks disgorgement of all funds Defendants raised as a result of their

fraudulent offering of Systems and CCT securities to the public. The offering of securities

involving these two entities should be treated as one offering because both companies were under

the Defendants' common control and money raised through the sale of securities in the two

companies were commingled to benefit the Defendants. (See Compl. ¶¶ 1, 2, 33.) Here,

Defendants' own records prove that they were unjustly enriched by $1,933,403.75, representing

the amount Defendants collected from investors through their fraudulent scheme. (See Statement

of Damages ¶ 9.)

    The Second Circuit has set forth the standard for awarding and calculating prejudgment

interest for disgorgement in a Commission enforcement action:

> In deciding whether an award of prejudgment interest is warranted, a court should
> consider (i) the need to fully compensate the wronged party for actual damages suffered,
> (ii) considerations of fairness and the relative equities of the award, (iii) the remedial
> purpose of the statute involved, and/or (iv) such other general principles as are deemed
> relevant by the court. In an enforcement action brought by a regulatory agency, the
> remedial purpose of the statute takes on special importance. When the SEC itself orders
> disgorgement, which as discussed above is designed to strip a wrongdoer of its unlawful

14

> gains, the interest rate it imposes is generally the IRS underpayment rate . . . That rate reflects what it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from its fraud.

First Jersey, 101 F.3d at 1476 (citations and internal quotation marks omitted). In First Jersey,

the Second Circuit upheld the district court's use of the "IRS underpayment rate" to calculate

prejudgment interest for disgorgement, as well as the district court's calculation of such interest

"for the entire period from the time of defendants' unlawful gains to the entry of judgment." Id.

at 1476-77.

It is appropriate for this court to order defendant CCT to disgorge the ill-gotten gains it

received and to pay prejudgment interest thereon. See, e.g., First City, 890 F.2d at 1230. The

Commission calculates prejudgment interest on CCT's ill-gotten gains, at the IRS underpayment

rate, in the amount of $125,255.48. (See Statement of Damages ¶ 9.)

D.    The Court Should Order Civil Penalties Against CCT

"Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the

Exchange Act, 15 U.S.C. § 78u(d)(3), provide for the imposition of civil penalties, for any

violation of the Act involving 'fraud, deceit, manipulation, or deliberate or reckless disregard of a

regulatory requirement' that 'resulted in ... or created a significant risk of substantial losses."

SEC v. Opulentica, 479 F. Supp. 2d 319, 331 (S.D.N.Y. 2007). Here, "[d]isgorgement alone is

an insufficient remedy, since there is little deterrent in a rule that allows a violator to keep the

profits if she is not detected, and requires only a return of ill-gotten gains if she is caught." SEC

v. Inorganic Recycling Corp., 2002 U.S. Dist. LEXIS 15817, at *11-12 (S.D.N.Y. Aug. 22,

2002). "Civil penalties are designed to punish the individual violator and deter future violations

of the securities laws." SEC v. Haligiannis, 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007); see also

SEC v. Moran, 944 F. Supp. 286, 296 (S.D.N.Y. 1996).

To determine what civil penalties should be imposed, "courts look to a number of factors, including (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." Opulentica, 479 F. Supp. 2d at 331. Where, as here, the only factor that might potentially militate in a defendant's favor is an inability to pay, third tier penalties should be imposed. See Inorganic Recycling, 2002 U.S. Dist. LEXIS 15817, at *11 ("[Defendant]'s claims of poverty cannot defeat the imposition of a disgorgement order or civil penalty.").

The penalty provisions set forth three tiers of penalties that a court may assess in a Commission enforcement action. The third tier is applicable in cases – such as this one –where the violations (1) involve fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement, and (2) directly or indirectly result in substantial losses or create a significant risk of substantial losses to other persons. "Third tier" penalties are not to exceed the greater of $120,000 ($600,000 for corporations) or the gross amount of defendant's pecuniary gain. 15 U.S.C. §§ 77t(d)(2)(C) and 78u(d)(3)(B)(iii).[2] CCT's conduct satisfies the requirements for imposing the maximum allowable penalty. Among other things, CCT made material misrepresentations and omissions to investors to induce them to invest in a fraudulent scheme, which deprived investors of nearly $2 million.

---

[2] The statute actually sets the penalties at lower amounts. However, pursuant to the Debt Collection Improvement Act of 1996, these amounts have been adjusted for inflation. 17 CFR § 201.1001.

## CONCLUSION

For the foregoing reasons, the Commission respectfully requests that this Court enter a default judgment against Defendant CCT for the relief requested in the Complaint, including injunctions against future violations of the securities laws, a penny stock bar, disgorgement of ill-gotten gains plus prejudgment interest thereon, and civil penalties. A proposed form of judgment is filed herewith. (See Rodriguez Decl. ¶ 8 & Ex. 5.)


Dated: New York, New York
       June 16, 2008




                                        Respectfully submitted,


                         By:

                                        Valerie A. Szczepanik
                                        Michael D. Birnbaum
                                        Attorneys for Plaintiff
                                        Securities and Exchange Commission
                                        New York Regional Office
                                        3 World Financial Center, Room 400
                                        New York, NY  10281-1022
                                        Ph: (212) 336-0175
                                        Fx: (212) 336-1317
                                        szczepanikv@sec.gov

Of Counsel:

Meaghan S. Cheung
Teresa A. Rodriguez



17